MAX N. TOBIAS, JR., Judge.
| jThe JC Patin Group, LLC (“Patin Group”) appeals a judgment granting the motion of the plaintiff, Shield Mott Lund L.L.P. (“SML”), to enforce an agreement that required Cedric Patin (“Cedric”) and Patin Group to pay SML the money due them from an open account collection lawsuit judgment that had been rendered against Cedric and P R Contractors Inc. (“PRC”). For the reasons that follow, we dismiss the appeal and remand this case for further proceedings.
A judgment was rendered on 27 February 2002 in SML’s favor and against Cedric and PRC for $29,641.36, plus judicial interest, and costs. In 2008, in an effort to collect the judgment, SML sought to garnish Cedric’s interests in and compensation from Patin Group. When Patin Group failed to answer SML’s interrogatories, SML sought a judgment pro confesso against Patin Group. Patin Group avoided the judgment pro confesso by filing its answers to the interrogatories. The answers, captioned “Garnishee’s Answers to Interrogatories,”[1] were filed on 20 April 2009 by Patin Group’s attorney, Jonathan B. Andry (“Andry”); therein Andry stated that he was counsel of record for Patin Group. (Thereafter, Andry never filed a motion to withdraw as counsel of record for Patin Group; ergo, his legal representation of Patin Group continued throughout these proceedings and remains in effect today.)
l2In anticipation of a court hearing to be held on 15 December 2011, SML’s counsel prepared a written agreement, styled “Guaranty,” to be signed by Patin Group and Andry. At that 15 December 2011 hearing, .Cedric, Mr. Andry, and SML’s counsel, Jeffrey K. Prattini, appeared. Andry represented Patin Group thereat by virtue of his previous enrollment as counsel for that entity. Cedric represented himself. A La. C.C. art. 3071 compromise was read into the record by Andry,[2] also who introduced a copy of the unsigned agreement into evidence.[3] That agreement was received into evidence without objection. At that time, Andry represented that he was holding Cedric’s first installment payment of $5,000 pursuant to the agreement[4] in his attorney’s trust/escrow account. Cedric and SML’s counsel confirmed on the record that they consented and assented to the agreement. The agreement obligated Patin Group to pay the full amount of the judgment of 27 February 2002, judicial interest from date of judicial demand (7 September 2001), and *556 costs if Cedric did not make the installment payments on the dates and for the amounts indicated.
Although the first installment was paid, Cedric did not deliver the second payment timely; that is, he delivered a second check for $5,000 on 4 January 2012 to Andry. Andry advised SML’s counsel that day that he was depositing the check |sin his firm’s trust/escrow account and that SML would receive payment “[a]s soon as the funds are available.” In response, SML sent a letter to Patín Group and Joseph C. Patín, Cedric’s father and a member of Patín Group, declaring that Cedric was in default for failure to make the timely installment payment and that Patín Group was now liable for the full amount of the judgment (“$29,641”), attorney’s fees and costs of $14,412.50, judicial interest of $17,748.81, subject to a credit of $5,000 for the first installment payment under the agreement. Although Andry sent a $5,000 check to SML on 9 January 2012, SML rejected the payment, returned the check, and reiterated that it was owed the full amount per their previous letter. SML further indicated that it would only accept the check for $5,000 as a payment towards the full judgment, attorney’s fees costs, and judicial interest, and not as an installment pursuant to the agreement.
On 30 January 2012, Andry, on behalf of Cedric and PRC, filed a motion to enforce the agreement of 15 December 2011, asserting that SML had been arbitrary and capricious in declaring the agreement breached. On 9 February 2012, SML filed a countermotion to enforce the agreement; their motion sought (1) a declaration that the agreement was valid and (2) a money judgment against Patín Group for the full amount due under the 2002 judgment. On 29 February 2012, Andry filed a motion to withdraw Cedric’s and PRC’s motion of 30 January 2012 to enforce, and an ex parte motion to declare the judgment of 27 February 2002 null and void because it was prescribed and had not been revived within ten years of its rendition. See La. C.C. art. 3501; La. C.C.P. art. 2031. Cedric and Patín Group also contended that the agreement was a contract of suretyship and was extinguished by virtue of SML’s failure to revive the 27 February 2002 judgment, citing La. C.C. art. 3061. The ex parte motion was denied by the trial court. On 1 | ¿March 2012, Cedric and PRC, filed a contradictory motion to declare the judgment a nullity; a rule to show cause was entered setting a hearing. Ultimately, the motions were contradictorily heard to determine whether the 2002 judgment was null and void and whether the agreement was enforceable.
The trial court ruled that the agreement of 15 December 2011 was a second obligation that bound Patín Group to timely make the scheduled payments under the agreement in the event Cedric did not do so. Because the payments were not timely, the court concluded and rendered judgment (and notice of judgment) on 3 May 2012 that SML was entitled to enforce the new agreement and that the judgment of 27 February 2002 was null and void.[5] On 24 May 2012, Patín Group filed a motion to clarify the 3 May 2012 judgment. The record before us reflects no ruling on the motion and no ruling was required; however, if the motion was intended to be a motion for new trial, it is untimely and the trial court could not rule upon it because the court had been divested of jurisdiction. La. C.C.P. art. 1974; see also La. C.C.P. art. 2088.
*557 From that 3 May 2012 judgment declaring that the 2002 judgment was null and void and granting enforcement of the agreement, Patin Group filed a motion to appeal on 10 July 2012. However, we find that Patin Group’s motion for devolutive appeal is untimely, having been filed more than sixty-seven days from the date of the notice of judgment. La. C.C.P. art. 2087. To have been timely, Patin Group would have had to file its appeal on 9 July 2012.
|BThe failure of a party to timely file a motion of appeal, regardless of when an order of appeal is granted, deprives this court of jurisdiction to review the issues raised on appeal. However, we note that the trial court never rendered a judgment on that part of SML’s motion to enforce the agreement wherein SML sought a money judgment against Patin Group.[6] A remand for further proceedings in order to do so.
Accordingly, the appeal of JC Patin Group, L.L.C. is dismissed. This case is remanded to the trial court for further proceedings.
APPEAL DISMISSED; REMANDED.
BAGNERIS, J., concurs.

. The Garnishee’s Answers begins with the language, “NOW COMES Garnishee, J.C. Pa-tin Group, L.L.C., through undersigned counsel ...," and is "Respectfully Submitted” by Andry. [Emphasis in original.]

. Andry makes a statement at that hearing that "I hope to be appearing as a friend of the Court and the parties trying to resolve the case....” That statement, however, does not permit Andry to argue that he appeared in court that day not formally representing anyone; he appeared before the trial court as counsel and mandatory for Patin Group by virtue of his formal appearance as counsel of record. See Rule 1.16, Louisiana Rules of Professional Conduct.

. Although the formal document that had been prepared had a caption reading "Guaranty,” it is well-séttled law that a caption does not govern what a document actually is. A reading of the document clearly indicates that it was not intended to be a suretyship agreement; rather it was intended to be a separate and distinct agreement between Patin Group, Cedric, and SML, each having respective duties and obligations thereunder.

. The agreement required Cedric to pay to SML $5,000 on the 10th day after the agreement was agreed to; $5,000 on or before 3 January 2012; $10,000 on or before 2 February 2012; and $9,641.36 on or before 4 March 2012.

. Although the trial court found the 27 February 2002 judgment null and void, it actually meant that the judgment was prescribed and unenforceable. A prescribed judgment is not a nullity; rather it creates a natural obligation. La. C.C. arts. 1760-1762.

. We express no opinion whether the matter can be heard as summary matter or must proceed by ordinary proceedings.